ANNIE P. KRAUSE ET AL. V. CITY OF EL PASO.

No. 1747. Decided December 18, 1907.

**1.—City—Streets—Private Occupancy—Estoppel.**

A city may be estopped from complaining of the occupancy of a public street, commenced and continued in good faith, by buildings erected by authority of its officials, by one misled by their acts. (Pp. 216–219.)

**2.—Same—Cases Discussed.**

Webb v. Demoplis, 21 L. R. A., 62; Snyder v. Pulaski, 52 N. E. Rep., 62; Mobile v. Sullivan Timber Co., 129 Fed. Rep., 298; Philadelphia M. & T. Co. v. City of Omaha, 88 N. W. Rep., 523; Kalteyer v. Sullivan, 18 Texas Civ. App., 495, distinguished. Ralston v. Weston, 46 W. Va., 544, disapproved. Gregory v. Knight, 50 Mich., 63, and other cases followed. (Pp. 216, 217.)

**3.—Same—Case Stated.**

The ordinances of a city required permits from the mayor for the erection of buildings and provided for survey of lots by the city engineer on application of the owner; a lot owner, before building, procured such survey and in good faith erected a valuable brick building on the property so designated by the engineer, but which was in fact partly upon ground then unused, but which had been dedicated to the public by being designated as a street on the maps adopted by the original proprietors and officially recognized by the city authorities; such occupation was continued twenty years without objection from the city authorities; and at their requirement sidewalks were constructed and kept in repair during that time along the lines so occupied. Held that the city was estopped and could be enjoined from requiring the owner to vacate such property for use as a street. (Pp. 214–219.)

Error to the Court of Civil Appeals for the Fourth District in an Appeal from El Paso County.

*Walter Davis, T. A. Falvey* and *William Aubrey,* for plaintiff in error.—Estoppel applies to a city—as much so as to an individual. Victoria v. Victoria County (T. C. A.) 94 S. W. R., 368; Evans v. Cincinnati, 2 Handy (Ohio) 236; Landis v. Hamilton, 77 Mo., 563; Simplot v. Dubuque, 49 Iowa, 630; Bell v. Burlington, 27 N. W. R., 245.

The city may be estopped as to any matter in which it has authority to act, such as the alteration or abolishment of a street. Simplot v. Chicago, M. & St. P. R. Co., 16 Fed. Rep., 350; Hamilton v. State, 106 Ind., 361; Collett v. Board of Comrs. of Vandenburg, 119 Ind., 27; Jordan v. City of Chenoa, 166 Ill., 530; Hewes v. Village of Crete, 175 Ill., 348; City of Carlinville v. Castle, 177 Ill., 105; Paine Lumb. Co. v. City of Oshkosh, 89 Wis., 449; City of Cincinnati v. Evans, 5 Ohio St., 594; Lane v. Kennedy, 13 Ohio St., 42; Union Depot Co. v. St. Louis, 76 Mo., 394; Boone County v. Burlington, etc., Ry., 139 U. S., 694; Martel v. E. St. Louis, 94 Ill., 67; Roby v. Chicago, 64 Ill., 447; Chicago, R. I. & P. Ry. v. Joliet, 79 Ill., 39; Logan County v. Lincoln, 81 Ill., 156.

In the absence of proof, it is to be presumed that a public officer acts within the scope of his authority. Wooters v. Hall, 61 Texas, 16; Prendergast v. Williamson, 6 Texas Civ. App., 731.

A city by ratification and adoption of an act in excess of its officers' authority, becomes bound thereby. Marshall v. Schenck, 5 Wall., 772.

*R. F. Burges,* City Attorney, *M. W. Stanton* and *W. M. Coldwell,* City Attorney, for defendant in error.—In its governmental functions such as the control and dominion over its streets, the doctrine of estoppel has no application to a municipal corporation. Webb v. Demopolis, 21 L. R. A., 69; Ralston v. Weston, 76 Am. St. Rep., 834; London & S. F. Bank v. City of Oakland, 86 Fed. Rep., 30;

City of Waterloo v. Union Mills Co., 34 N. E. Rep., 197; Shirk v. City of Chicago, 63 N. E. Rep., 193; Rissing v. City of Ft. Wayne, 37 N. E. Rep., 328; City of Little Rock v. Wright, 23 S. W. Rep., 876; Solberg v. City of Decorah, 41 Iowa, 505; Rhodes v. Brightwood, 43 N. E. Rep., 942; Town of San Leandro v. Le Breton, 13 Pac. Rep., 405, and cases cited; Dillon, Mun. Corp., secs. 669, 675; Elliott on Roads & Streets, secs. 669, 670. Also authorities on various phases of estoppel claimed. Louisiana Ice Mfg. Co. v. New Orleans, 9 So. Rep., 21; Sheen v. Stothart, 29 La. Ann., 630; Wolfe v. Town of Sullivan, 32 N. E. Rep., 1017; Wilder v. City of St. Paul, 12 Minn., 192; Witherspoon v. City of Meridian, 13 So. Rep., 843; State v. Leaver, 22 N. W. Rep., 576; Waller v. City of Dubuque, 29 N. W. Rep., 456; Maxmilian v. Mayor, 62 N. Y., 164; McCarty v. Bauer, 3 Kan., 237; Mayor, etc., v. Porter, 79 Am. Dec., 686; Abell v. Prairie City, 31 N. E. Rep., 477; Union School Trustees v. First Natl. Bk., 2 N. E. Rep., 194; City of Eureka v. Armstrong, 83 Cal., 623; Koppelmann v. Koppelmann, 94 Texas, 40; Dill., Mun. Corp. (3rd ed.) sec. 978; 2 Beach on Pub. Corp., sec. 1659.

Under the Charter of the City of El Paso granted in 1873 and in force in 1882 there was no power in the City of El Paso to alien any street or confer it upon an individual. Kalteyer v. Sullivan, 18 Texas Civ. App., 495; Gillean v. City of Frost, 61 S. W. Rep., 349; Webb v. Demopolis, supra, and Ralston v. Weston, and authorities cited under last proposition.

The laches or negligence or mistake of the city engineer can not estop a city to claim its streets. Waller v. City of Dubuque, 29 N. W. Rep., 456; Maxmilian v. Mayor, 62 N. Y., 164; McCarty v. Bauer, 3 Kan. 237; Dill., Mun. Corp. (3rd ed.) sec. 978.

Requiring construction of sidewalk, or assessment of property for street paving or for taxes, does not estop city to claim street. Gillean v. City of Frost, 61 S. W. Rep., 349; Rhodes v. Brightwood, 43 N. E. Rep., 942; Town of San Leandro v. LeBreton, 13 Pac. Rep., 405; Louisiana Ice Mfg. Co. v. New Orleans, 9 So. Rep., 21; Witherspoon v. City of Meridian, 13 So. Rep., 843; State v. Leaver. 22 N. W. Rep., 576; Shirk v. City of Chicago, 63 N. E. Rep., 193.

The formal adoption of a map showing street closed or failing to indicate street, does not work abandonment or estoppel. City of Eureka v. Armstrong, 83 Cal., 623; Wilder v. St. Paul, 12 Minn., 192.

In order for the doctrine of estoppel to have any application to this subject or be applied to municipal corporations, the authority of the corporation must have extended to the exercise directly of the power in question. Now it would seem that it requires no authority to sustain the proposition that the city council can not sell a part of the public street to any person for private use, and that therefore the city of El Paso could not have sold the appellants and made a valid transfer to the portion of the street which the appellants claim. Snyder v. City of Mt. Pulaski, 52 N. E. Rep., 62; City of Uniontown v. Berry, 72 S. W. Rep., 295; Philadelphia M. & T. Co. v. City of Omaha, 88 N. W. Rep., 523; City of Mobile v.

Sullivan Timber Co., 129 Fed. Rep., 298; Coszler v. Corp. of Georgetown, 6 Wheaton, 593; Winter. v. City Council of Montgomery, 83 Ala., 594; St. Paul & Pac. Ry. Co. v. Schurmeir, 7 Wall., (U. S.) 272; Indiana Canal Co., v. State, 53 Ind., 575. See also Simplot v. Chicago, M. & S. P. Ry. Co. 16 Fed Rep., 350.

Since none of the facts stated in themselves constitute an estoppel, it follows that collectively they can not have that effect. Koppelmann v. Koppelmann, 91 Texas, 40.

Mr. Justice Brown delivered the opinion of the court.

Annie P. Krause, John P. Pryor and Thos. D. Pryor, heirs and legatees of Mrs. Fannie D. Porter, deceased, instituted this suit in the District Court of El Paso County to enjoin the city of El Paso from removing a portion of a brick house on a small piece of land situated at the intersection of San Antonio and Stanton streets, which land is alleged to be the property of plaintiffs. The land in controversy is a triangular piece twenty-four feet on Stanton street and its north line running to an intersection with San Antonio street, about twenty-eight feet. The controversy arose over a conflict of maps of the city, which had been made previously and subsequently to the acquisition of the property. On some of the maps Myrtle avenue, which approached Stanton street from the opposite side to San Antonio street, if its north line be extended, would cut off the southeast corner of lot 63 in block 12, in triangular form as above stated. The city filed a plea in reconvention claiming the right to the street, setting up the fact of its dedication to public use and the acceptance of it by the city, to which plaintiffs answered by general denial and not guilty.

There is a very elaborate statement of the case made by the Honorable Court of Civil Appeals embracing the findings of fact of the trial court, which findings we condense as follows:

In the year 1858, Gillette Brothers, J. F. Crosby and Morton & Kelley owned the land on which the city of El Paso is located, and, in that year, they employed Anson Mills, a surveyor, to lay the land out in lots, blocks, streets and alleys and make a plat of it, which he did, but the said owners were not satisfied with the plat, which we will call the first Mills map. The streets and the lot and block which is here claimed were shown and platted as is claimed by the plaintiffs. In May, or June, 1859, at the instance of the owners of the said land, Mills made a map which was signed by him and accepted and signed by the owners of the land. Copies of this map were kept in the office of the company and were used by them in the sale and transfer of the lots in the city. The map was lithographed and was used by the public generally and became known as the Mills map of the city of El Paso, and we shall so designate it in this opinion. The last named map showed lot 63 in block 12, San Antonio street, Stanton street and Myrtle avenue as they are now claimed by the city. This first Mills map was never used by the owners of the property, nor by others in the transfer of property within the city. El Paso seems to have been unincorporated until 1873, when it was chartered under the laws of the

State, whether by special act or by general law is not stated. In 1874 the city council of the city of El Paso adopted an ordinance by which all obstructions on any street, alley, etc., were declared to be an offense and punishable by fine. In 1881 the city engineer made a map of the city 'n accordance with the Mills map, which was adopted by the council on May 26, 1 81, but it was provided that it should not be binding upon those whose land had not been dedicated to the use of the city. This last map was in use when Mrs. Porter purchased the land. At a subsequent date not given in the statement, one Campbell and others made an addition to the city of El Pas , and made a map of the city as well as of the addition, which showed lot 63 in block 12 and the streets to be laid out as in the first Mills map. In 1885, J. G. Hilzinger, who was assessor of taxes for El Paso, prepared for himself a map according to the first Mills map, and the Hilzinger map was adopted by the city council. Thereafter, at a date not given, Wimberly, city engineer, prepared a map of the city in conformity to the Mills map, which was adopted by the city and has continued to be the official map since that time.

July 24, 1882, Rector & Campbell, being the owners of lot 63 in block 12, conveyed it to Mrs. Porter, the deed describing the land conveyed as shown by the first Mills map. At that time there was an ordinance of the city of El Paso which required persons who desired to erect improvements upon their property to have their lines designated by the engineer, and Mrs. Porter, being desirous to erect a house upon her property, called upon the city engineer to show her the lines of the streets surrounding her property. The city engineer in accordance with her request surveyed the lot and designated the lines and corners according to the first Mills map. Mrs. Porter built upon the property a brick house and went into possession of it, and the possession has been continuous since that time until this suit was brought. At a date not given, the city of El Paso required Mrs. Porter to make a sidewalk along her property at the place where the controversy arose, which recognized her right as she claimed it and the location of the streets as it was shown upon the first Mills map. In subsequent years Mrs. Porter was at different times required to repair this sidewalk and keep it in good condition. There does not appear to have been any claim set up by the city to this piece of ground until the institution of this suit or a short time prior thereto. The brick house upon the property is simply said by the court to be valuable but its value is not given. To enforce the right of the city would practically destroy this house.

In the charter of the city of El Paso are these provisions:

"Sec. 36. To have the exclusive power and control over the streets, alleys, sidewalks, lanes, avenues, and public grounds and highways of the city, and to abate and remove encroachments or obstructions thereon; to open, alter, widen, straighten, extend, establish, abolish, regulate, grade, re-grade, clean, pave, macadamize, or otherwise improve the same."

Sec. 103. The duties of the engineer and surveyor shall be fixed by the city council, and also his compensation, and the fees he

shall be allowed for all work done for the city or private individuals as city engineer and surveyor, as well as the amount of bond he shall give for the faithful performance of his duties."

The city adopted an ordinance that was in force in 1882, from which this extract is made: "It shall be the duty of the city engineer to make all surveys of such streets, blocks, lots or other grounds within or without the city as the city council shall direct; . . . to make all surveys of lots, blocks or other grounds within the city for private individuals when called upon by them to do so, of which surveys, when so completed, he shall give certificates to such individuals as may require them and shall keep in his office a record book wherein a plat of every survey made by him within the city shall be placed and indexed."

The case was tried in the District Court before the judge, a jury being waived, and judgment was entered against the plaintiffs, which judgment was by the Court of Civil Appeals affirmed.

The findings of fact made by the Court of Civil Appeals estabtablish that the land in controversy was embraced in Myrtle avenue according to the plat of the city in which the proprietors dedicated the streets to the use of the public and that the streets so platted were accepted by the city of El Paso.

To justify a reversal of the judgments of the Court of Civil Appeals and District Court it must appear that the city was estopped to claim the ground as a part of the public highway, or that the facts show that the city had abandoned the use of that part of the street. The defendants in error submit the proposition that a municipal corporation can not convey the public streets of a city to private individuals for private use, therefore, the title to the streets can not pass from the corporation to the citizen by estoppel. In support of this proposition they cite the following cases, with others: (Webb v. Demopolis, 21 L. R. A., 62; Snyder v. Pulasky, 52 N. E. Rep., 62; Mobile v. Sullivan Timber Co., 129 Fed. Rep., 298; Philadelphia Mtg. & Tr. Co. v. Omaha, 88 N. W. Rep., 523; Simplot v. Chicago M. & S. Ry. Co., 16 Fed. Rep., 350; Ralston v. Weston, 46 W. Va., 544, 76 Am. St. Rep., 834).

In Webb v. Demopolis, the Supreme Court of Alabama expressed a doubt as to the applicability of the doctrine of estoppel to a municipal corporation in any case, but the facts did not call for a decision of the question. The court said: "If it were necessary to pass on the point in the present case we should be much inclined to hold that no act or omission to act on the part of the municipality with reference to obstructions in public streets could in any case raise up an estoppel against it to proceed in the interest of the public to have such obstructions removed, however long they had been allowed to remain in the street."

In Snyder v. Pulasky, the Supreme Court of Illinois used language which is broad enough to embrace this case, but the facts of that case were, that by contract a citizen was permitted to use water from a well in a public street for a given time, and the court held that the city had no authority to bind the public by such a contract and that the doctrine of estoppel would not apply.

The use of the well was not in opposition to the right of the city but under and by authority of the city and the doctrine of estoppel could not arise; it was simply a question of the validity of the contract. The conclusion in that case is sound, but the reasoning of the judge is in conflict with a number of cases decided by the Supreme Court of that State.

In City of Mobile v. Sullivan Timber Co., the persons who claimed the estoppel knew that they had no right in the land beneath the navigable waters of that bay. They did not act under any authority of the city, nor under a representation of an officer, but simply used the property by the construction of a wharf, without objection or interference on the part of the city. No act of the city misled them.

In the case of Philadelphia Mortgage and Trust Co. v. City of Omaha, decided by the Supreme Court of Nebraska, taxes had been levied by the city upon the property in question, and, through a mistake, the tax collector marked on the rolls that the taxes were paid. The Trust Company loaned money and took a mortgage on the property and claimed that the city was estopped, by the act of the tax collector, from enforcing its lien for taxes upon the property. There is nothing in the facts of that case to bring it within the rule under which the authorities apply the doctrine to municipal corporations.

Counsel for the city invites special attention to Ralston v. Weston, (76 Am. St., 834, 46 W. Va., 544). The writer has read the opinion with much interest. That opinion thoroughly sustains the contention of counsel, but we think the opinion is not sound. The court states that his conclusion is sustained by a number of states, Texas being among them. No case in this State holds the doctrine laid down in the case cited.

Kalteyer v. Sullivan (18 Texas Civ. App., 495) was a controversy between two property owners, which involved the power of the city to close an alley. The doctrine of estoppel could not apply to the facts and was not mentioned in the opinion.

Ordinarily a municipal corporation is not subject to estoppel by reason of the negligent or unauthorized acts of its officers; but it is generally recognized that there are exceptions to that rule. The decided weight of authority places this case within one of the exceptions which is clearly and tersely stated by Judge Campbell, in Gregory v. Knight (50 Mich., 63), in this language: "It also appears that plaintiff claims to have occupied on his lines for more than twenty years, and it seems quite likely that the fences were put where the authorities and parties supposed the lines to be. Such a practical construction, if long acquiesced in, would necessarily bind the public. Ellsworth v. Grand Rapids, 27 Mich., 250. It would be wrong and illegal to put a highway, as against long possession, on any better footing than other property. Highways may be wholly, and there is no reason to hold they may not be partially, discontinued by non-user. It is the business of the authorities, when roads are laid out, to take some pains to designate the boundaries on the ground, and to have the lines visibly defined.

If this is not done, the mischief of unsettling what is generally accepted will be very great, and the rights of parties, whether depending on surveys or possession, will be protected by the ordinary courts of justice."

The doctrine here stated is well supported by many well considered cases, from which we cite the following: City of Big Rapids v. Comstock, 65 Mich., 78; Peoria v. Johnston, 56 Ill., 45; Lee v. Mound Station, 118 Ill., 304; Carlinville v. Castle, 177 Ill., 105; Jordan v. City of Chenoa, 166 Ill., 530; Simplot v. Dubuque, 49 Iowa, 630; Paine Lumber Co. v. Oshkosh, 89 Wis., 449.

Why should a municipal corporation, which has led a citizen into error and caused him to expend large sums of money in the erection of permanent improvements upon a portion of the highway, after twenty years occupancy, be permitted to destroy the improvements without compensation, simply to assert a legal right? A sense of justice common to all civilized people revolts at such a rule of legalized wrong. The facts in this case show without dispute that when Mrs. Porter bought lot 63 in block 12 in the then little town of El Paso there was nothing on the ground to indicate that the North line of Myrtle avenue extended across Stanton street so as to make a wedge shape between San Antonio street and lot 63. At that time the streets were not much used, and Myrtle avenue at the point opposite to this place was not designated in any way upon the ground. These conditions of uncertainty made it necessary that Mrs. Porter should secure reliable information as to the lines of these streets and their relation to her lot before she erected the brick house which was in contemplation. To whom could she apply for such information? There was an ordinance of the city which required that before she built her house Mrs. Porter should make application to the Mayor for a permit to build, giving a description of the lot on which the house was to be erected, and another ordinance made it the duty of the city engineer, upon request by Mrs. Porter, to survey her lot, giving a certificate and keeping a record of the survey. Mrs. Porter's application to the engineer and his survey under the circumstances fully justified her good faith in acting upon the lines thus established as being the boundaries of her right and indicating the public highway to which the city was entitled, and the fact that she erected a permanent building of brick upon the ground shows that she acted in good faith upon the permit to build and the engineer's survey. Her occupancy was not only adverse to all claim of the city to the ground as a public highway, but absolutely excluded the public from any use of it as such for the full period of time named. It is claimed that there is no proof that an application was made; but building without it would have been unlawful and it would have been the duty of the officers to punish her. No prosecution having been inaugurated, nor any objection to the erection or continuance of the house upon the lot for more than twenty years, it will be assumed that she acted lawfully and the making of the application will be presumed. The requirement of the city that Mrs. Porter should construct a sidewalk along the front of her property for the use of the public in passing to and fro,

and the demand of the city that she keep the sidewalk in repair, were affirmative acts recognizing the rightfulness of her possession. Arguments would not add to the force of such facts, for they embody the logic of common right and fair dealing which compels the conclusion that the city of El Paso, by the acts of its officers, with the absolute possession by Mrs. Porter during the great length of time, is estopped now to claim that the piece of land occupied by the brick house shall be yielded up to public use at great loss to the owner by the destruction of that building. The inconvenience to the public, if indeed there be any, would be so small in comparison with the damage to the owner that nothing but an inflexible rule of law would justify the enforcement of the city's claim. It would, in fact, be the appropriation of private property to public use without compensation. (Ralston v. Weston, above cited.) In that case the court said: "Whenever private property is taken or damaged for public use, it must be done through the public officers, acting as the agents of the people. And for these same officers to mislead, either by acts of omission or commission, a private person into building a costly structure over the line of a public highway, in the belief that he was within the limits of his own property, and then demolish or remove it as a public nuisance, would be taking and damaging private property for public use without just compensation. Hence, to regain the use of the highway lost in this manner, they must do so under the right of eminent domain, in so far as the intrusive structure is concerned."

We have not rested our conclusion upon the constitutional guaranty against taking private property for public use without compensation, but it embodies a sound principle of justice and right that courts may well, and do consider, in determining such cases. Counsel for the City of El Paso insist that in case the judgment in this cause be reversed the case shall be remanded to the District Court for another trial. It appears that the case has been fully developed, there being no fact necessary to the determination of the rights of the parties which needs to be ascertained. It is therefore the duty of this court to enter such judgment as the trial court should have entered, and it is ordered that the judgments of the District Court and Court of Civil Appeals be reversed, and, now here proceeding to enter the judgment that the District Court should have rendered, it is further ordered that the City of El Paso take nothing by its suit against Annie P. Krause, John P. Pryor and Thos. D. Pryor, and it is further ordered that the temporary injunction granted by the judge of the District Court against the City of El Paso be perpetuated and that the said city be enjoined and forever restrained from removing the house or any part of it from the ground in question in this suit.

*Reversed and rendered.*