Affirmed and Opinion filed May 8, 2008








Affirmed and Opinion filed May 8, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00099-CV

____________

 

CHAPPELL HILL BANK, Appellant

 

V.

 

LILLIAN SMITH, Appellee

 



 

On Appeal from the 335th
District Court

Washington County, Texas

Trial Court Cause No. 33,421

 



 

O P I N I O N








Chappell Hill Bank appeals the trial court=s summary judgment
in favor of Lillian Smith as well as the court=s denial of the
bank=s summary-judgment
motion. The bank and Smith each own property facing Main Street in the same
block in the town of Chappell Hill.  In the action below, the bank sought (1) a
declaratory judgment stating that a certain strip of land running behind its,
Smith=s, and other
owners= properties is a
public alley; (2) a mandatory injunction ordering Smith to remove any and all
obstructions from the alley; (3) a prohibitive injunction enjoining Smith from
obstructing the alley in the future; and (4) recovery of its attorney=s fees.  We affirm
the trial court=s judgment against the bank, including the
attorney=s fee award to
Smith.

Underlying Facts and Procedural History

Jacob and Mary Haller originally platted the town of
Chappell Hill in the year 1849 (or thereabouts).  The Hallers designed the town
with blocks of lots bounded by streets running east-west and north-south. Some
blocks included 20-foot alleys running north-south between the rows of
east-facing and west-facing lots.  The Haller map was not recorded in the
real-property records of Washington County, but most if not all of the deeds
involving Chappell Hill property have referred to the map since the mid-1800's.

Block 1 in Chappell Hill contains 16 lots each having a
dimension of 40 feet by 100 feet.  The block is bounded on its north side by
Chestnut Street (also known both as FM 2447 and Athe Brenham Road@), on its east
side by Main Street (also known as FM 1155), on its south side by Cedar Street,
and on its west side by Sycamore Street.  The original Haller map depicts a 20-foot
alley in Block 1, running north from Cedar Street to Chestnut Street, between
Lots 1 through 8 that face Main Street and Lots 9 through 16 that face Sycamore
Street.

Appellee Lillian Smith owns Lots 1, 2, 9, 10, and the north
halves of Lots 3 and 11 in Block 1.  She thus owns the north two and one-half
lots on both the west (facing Sycamore Street) and east (facing Main Street)
sides of Block 1.  Her home, which her aunt Mildred Shaver built in 1959, sits
on this property.  Part of the home stands in the strip of land which the
Haller map shows as the alley for Block 1.  A cyclone fence, also erected in
1959, partially encloses Smith=s yard and crosses and blocks the
originally platted alley at the southern edge of her property.








Appellant Chappell Hill Bank owns Lots 7 and 8 in Block 1. 
These lots face Main Street, with Lot 8 being at the corner of Main and Cedar
Streets.  The Farmers= State Bank of Chappell Hill, predecessor
in title and interest to Chappell Hill Bank, purchased Lot 7 in 1907.  The bank
purchased Lot 8 in its own name in 1993.

In 2005, the bank brought this action against Smith.  In
its original petition for declaratory and injunctive relief, the bank sought to
open the alley to allow Athe free and unimpeded passage of the
public using such alley,@ and, more specifically, to allow Aits customers to
perform their banking business by having a customers [sic] drive-up window.@

          After
answering the bank=s complaint and filing a third-party
petition to join all other Block 1 property owners in the bank=s lawsuit, Smith
filed her motion for summary judgment.  She alleged that she was entitled to
judgment as a matter of law because under the undisputed facts, (1) the alley
had been abandoned under the common law or pursuant to statute, (2) the owners
of all lots within Block 1 had executed a quitclaim deed on April 1, 1959,
relinquishing all rights to the alley insofar as it abutted the property now
owned by Smith, and (3) the bank is estopped to assert any claim for use of the
alley insofar as it abuts Smith=s property.  She also prayed for recovery
of reasonable and necessary attorney=s fees incurred in
defending against the bank=s claims. 

The bank objected to portions of affidavit testimony
offered in support of Smith=s motion for summary judgment.  In
addition, the bank filed its own motion for partial summary judgment.  In that
motion, the bank argued that undisputed evidence shows (1) the alley in Block 1
was dedicated to the public and to abutting landowners in 1849, (2) the alley
has not been abandoned under common law or by statute, (3) the 1959 quitclaim
deed does not pertain to the alley involved in this lawsuit, and (4) Smith
expressly recognized and conveyed rights relating to the alley in several
property transfers occurring after 1959.








After holding two hearings on the parties= respective
motions, the trial court granted Smith=s and denied the
bank=s.  The trial
court also issued an order sustaining a number of the bank=s objections to
Smith=s summary-judgment
evidence and overruling the remainder of the objections.  On January 30, 2007,
the court entered its final judgment that the bank take nothing by its claims
against Smith but that Smith have judgment against the bank for $10,100.00 in
attorney=s fees.  From this
judgment, the bank appeals.

Standard of Review

The Texas Supreme Court has summarized the role of a court
of appeals when reviewing a judgment rendered on competing motions for summary
judgment.  In FM Properties Operating Co. v. City of Austin, 22 S.W.3d
868 (Tex. 2000), the Court stated:

When both sides move for summary judgment and the trial court grants
one motion and denies the other, the reviewing court should review both sides= summary judgment evidence and
determine all questions presented.  See Commissioners Court of Titus County
v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); Jones v. Strauss, 745 S.W.2d
898, 900 (Tex. 1988).  The reviewing court should render the judgment that the
trial court should have rendered.  See Agan, 940 S.W.2d at 81; Members
Mut. Ins. Co. v. Hermann Hosp., 664 S.W.2d 325, 238 (Tex. 1984).

FM
Properties, 22 S.W.3d at 872-73.  Where a trial court does not specify the basis on which
summary judgment is granted, the appealing party must show that it is error to
base it on any ground asserted in the motion.  Star-Telegram, Inc. v. Doe,
915 S.W.2d 471, 473 (Tex. 1996).  

In determining whether there is a disputed material-fact
issue precluding summary judgment, we must accept as true all evidence
supporting the non-movant.  Nixon v. Mr. Property Management Co., Inc.,
690 S.W.2d 546, 548-49 (Tex. 1985).   We must also indulge all inferences from
the evidence and resolve all doubts in favor of the non-movant.  Id. 
Because the propriety of a summary judgment is a question of law, we perform a de
novo review.  Nardini v. Continental Airlines, Inc., 60 S.W.3d 197,
200 (Tex. App.CHouston [14th Dist.] 2001, pet. denied) (citing Natividad
v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994)).








 Rulings on the admission or exclusion of evidence rest
within the sound discretion of the trial court.  City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); Horizon/CMS Healthcare Corp.
v. Auld, 34 S.W.3d 887, 906 (Tex. 2000).  This court will not reverse
unless it is shown that the trial court did in fact commit an abuse of
discretion and that the erroneous evidentiary ruling probably caused the
rendition of an improper judgment.  Gee v. Liberty Mut. Fire Ins. Co.,
765 S.W.2d 394, 396 (Tex. 1989); Melendez v. Exxon Corp., 998 S.W.2d
266, 274 (Tex. App.CHouston [14th Dist.] 1999, no pet.); see
also Tex. R. App. P. 44.1. 

The decision whether to grant attorney=s fees and costs
under the Texas Uniform Declaratory Judgment Act also rests within a trial
court=s sound
discretion.  Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985).  We
will therefore reverse the trial court=s grant of fees
only upon the showing of a clear abuse of discretion.  Id.  A trial court abuses its discretion
if it clearly fails correctly to analyze or apply the law, In re Cerberus
Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding), or
acts arbitrarily and without regard to guiding rules or principles.  Johnson
v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig.
proceeding). 

Analysis








The conveyance of land by reference to a map or plat
showing abutting roads or streets results in the purchaser=s acquiring a
private easement in the roads or streets shown on the plat.  Dykes v. City
of Houston, 408 S.W.2d 176, 181 (Tex. 1966).  The bank contends, and Smith
does not dispute, that the two deeds by which the bank acquired Lots 7 (in
1907) and 8 (in 1993) both refer to the Haller map.[1] 
Thus, the bank concludes, it holds a private easement in the land designated as
an alley on that map. Smith admits her house and fence obstruct the alley.

Estoppel By Deed

The summary-judgment record contains a document dated April
1, 1959, and entitled Quitclaim Deed: Sadie R. Schaer, et al to Mildred
Shaver.  The quitclaim deed provides:

The State of Texas

County of Washington

WHEREAS, many years ago, an alley 20 feet in width
was designated running from Pecan Street on the South north to the Brenham
[R]oad, said alley running parallel with Main Street, and,

WHEREAS, at the time of the construction of the
highway some 25 or more years ago, said highway being along what is known as
Brenham [R]oad, an embankment was made at the north end of this alley, and said
alley abandoned for all intents and purposes as such for a distance of 120.48
feet south of the Brenham [R]oad to the northwest corner of the property
presently owned by J. Knight, and, whereas the strip formerly used as an alley
for this distance of 120.48 feet has been used since that time by W. Reinstein
and his hears, and,

WHEREAS, the undersigned, being all of the property
owners in said block, do wish at this time, to acknowledge the fact of
abandonment of said alley for the distance of 120.48 feet as heretofore
described,

NOW THEREFORE KNOW ALL MEN BY THESE PRESENTS:








We, the undersigned,
being all of the adjoining property owners for and in consideration of the sum
of One and No/100 ($1.00) Dollars to us in hand paid by Mildred R. Shaver of
the County of Washington, State of Texas, the receipt of which is hereby
acknowledged, do by these presents relinquish, release, and forever quitclaim
our right of user of said alley for a distance of 120.48 feet from the
northwest corner of the Joe Knight property to the Brenham [R]oad unto the said
Mildred R. Shaver, her heirs and assigns forever, so that neither we, the said
adjoining property owners or our heirs, nor any person or persons claiming
under us shall, at any time hereafter, have claim or demand any right or title
to the aforesaid right of user to said alley for the distance prescribed.

Witness our hands this
the 1st day of April, A.D., 1959.

 

Following these quoted provisions
are the signatures of Sadie R. Schaer, Harry Lesser, Faye Lesser, and Robert
Schaer in his capacity as president of Farmers State Bank.[2] 
These signatures are notarized.  

Smith contends the
bank is estopped by virtue of its execution of the quitclaim deed to assert a
private easement in the north 120.48 feet of the alley.[3] 
Under the theory of estoppel by deed, the grantor of an estate in land is
estopped to assert an interest in or against the estate the deed purports to
convey.   See generally Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex.
503, 144 S.W.2d 878 (Tex. 1940); Gutierrez v. Rodriguez, 30 S.W.3d 558
(Tex. App.CTexarkana 2000, no pet.).  








The bank disputes on two grounds Smith=s right to
judgment on her defense of estoppel by deed.  First, the bank argues the
quitclaim deed cannot affect its assertion of rights in the alley of Block 1
because the quitclaim deed pertains to Aan alley . . . running
from Pecan Street on the South north to the Brenham [R]oad.@  The alley at
issue in this litigation runs north through Block 1 from Cedar Street to
the Brenham Road.  According to the bank, there is no evidence in the record
that it relinquished rights in the Block 1 alley.

The granting clause of the quitclaim deed expresses the
signatories= intent to release, quitclaim, and relinquish, in
favor of Mildred Shaver, all right in and to a 120.48-foot portion of an alley
running from the northwest corner of property owned by Joe Knight north to the
Brenham Road.  While this granting clause does not specifically identify, by
metes and bounds, the property in which interests are relinquished, the
description provides enough information so that a party familiar with the
locality can identify the premises with reasonable certainty.  See Gates v.
Asher, 154 Tex. 538, 541, 280 S.W.2d 247, 248-49 (Tex. 1955). 

In Gates, a warranty deed contained this description
of land to be conveyed: AAll of Lots Number ten (10), Eleven (11)
and Twelve (12) in Block One Hundred Seventy-five (175), in Denver Resurvey No.
2. . . .@  In the grantee=s suit, apparently
brought to compel performance of the conveyance, the grantor=s heirs claimed
the deed was invalid because there was no ADenver Resurvey
No. 2.@  There was a
Denver Resurvey, which was a replat of a portion of the original subdivision,
but the grantor owned no property in the block designated therein as Block
175.  The Denver Resurvey, however, depicted a Block No. 2 which was also
designated on the Denver Resurvey as Aorg. (original)
175.@  

The trial court entered judgment on a jury=s verdict in the
grantee=s favor, but the
court of appeals reversed.  The court of appeals held that the description of
the property to be conveyed was fatally defective, making the deed invalid, and
rendered judgment for the grantor=s heirs.  The
Supreme Court of Texas reversed the court of appeals and affirmed the trial
court=s judgment.  The
Court concluded that the property description, which was not defective on its
face, afforded Aa clue or key so that the land may be
identified with reasonable certainty.@  Gates,
280 S.W.2d at 248.  Discussing the Aclue or key,@ the Court stated:








Upon examination of the records it
is disclosed that there is no Denver Resurvey No. 2.  Looking at the plat of
Denver Resurvey the searcher finds a block designated A2" and the same block
designated as Aorg. 175".  The figure A2" in the description must
have been inserted for some purposes.  It cannot refer to the lots because they
are designated as 10, 11 and 12.  It cannot refer to the survey because there
is only one Denver Resurvey.  It would require no strained deduction to assume,
therefore, that the ANo. 2" designates the block
and particularly is this so when the plat reveals a block designated as A2" and also as Aorg. 175".

Id. at 249.  The
Court refused to disturb the jury=s finding that the
property description was sufficient to enable a party familiar with the
locality to identify the particular land with reasonable certainty to the exclusion
of any and all other tracts.  Id.

In this case,
Smith produced real-property records establishing Joe Knight=s, Mildred Shaver=s, Sadie Schaer=s, Harry Lesser=s, Faye Lesser=s, and Farmers
State Bank=s ownership of the lots in Block 1 of Chappell Hill,
Washington County, in 1959.  There is no proof or even a suggestion in the
record that in 1959 these identified persons and entity all owned property in
some other specific tract of land in Washington County.  Smith testified by
affidavit that she knows of no Pecan Street in Chappell Hill; the bank tendered
no proof of any other alley to which the quitclaim deed could apply.[4] 









Here, because the bank has not shown the reference to an
alley running north from Pecan Street to Chestnut Street to have any meaning
whatsoever, there is no irreconcilable conflict between the quitclaim deed=s clauses. 
Indeed, the bank has not alleged that the quitclaim deed is ambiguous. 
Construction of an unambiguous deed is a question of law for the court.  Altman
v. Blake, 712 S.W.2d 117, 118 (Tex. 1986).  The intention of the parties is
paramount in construing a deed.  Id.  

For summary-judgment proof, both Smith and the bank relied
on the Haller map, which depicts an alley running north through Block 1 from
Cedar Street to the Brenham Road (then known as Chestnut Street).  We conclude
there is no issue of fact concerning the property the bank and other landowners
in Block 1 intended to relinquish and quitclaim in 1959 to Mildred Shaver. 
They intended to relinquish and quitclaim any interest each or any of them had
to the 120.48-foot portion of the alley abutting Mildred Shaver=s property at the
north end of Block 1 along the Brenham Road.  Reference in the quitclaim deed
to Pecan Street is not a sufficient basis on which to withhold the estoppel
effect of the quitclaim deed against the bank.

The bank asserts a second basis for disputing that it is
estopped to enforce its easement against Smith.  In 1993, the bank purchased
Lot 8 from Smith and her co-owners and the deed to the property refers to the
alley.  Because the reference to the alley does not except or exclude the
northern 120.48 feet, the bank contends it acquired a private easement in the
Block 1 alley.  In its briefing, the bank characterizes the 1993 deed as a
rededication or ratification of the bank=s rights in the
alley, which rights nullify any effect the quitclaim deed may otherwise have
had on the bank=s rights as they existed before the
quitclaim deed was executed.

The bank cites no authority for this proposition, other
than the general principle that a conveyance of real property by reference to a
map showing abutting roads results in the purchaser=s taking the
property with a private easement in those roads.  See, e.g., Dykes, 406
S.W.2d at 181.  Our review of the law reveals no cases addressing the effect a
purchaser=s prior relinquishment of rights in the shown roads
may have on application of the general rule.  








Under the facts presented here, we are unwilling to hold
that reference to the alley in the 1993 deed of Lot 8 constitutes, as a matter
of law, a dedication to the bank of an easement in the entire alley.  The bank
purchased Lot 8 in 1993 after having expressly relinquished its right as an
abutting landowner to use the northern 120.48 feet of the alley and
knowing that the alley had been obstructed at its north end since 1959.[5] 
We conclude as a matter of law that the bank did not acquire under the 1993
deed a private easement in the entire alley. 

Finally, the bank claimed to have the right as a member of
the public to see the streets and alleys of Chappell Hill open for public use,
separate and apart from its right as an abutting landowner to a private
easement in the alley. See Adams v. Rowles, 149 Tex. 52, 56, 228
S.W.2d 849, 851 (Tex. 1950) (holding that conveyance of lots according to a
plat or plan of a town implies to the purchasers Athat the streets
and other public places, indicated as such upon the plan, shall be forever open
to the use of the public@).  Even if the quitclaim deed were to
preclude the bank from asserting its private rights as the owner of land
abutting the alley, the bank contends it is entitled to judgment as a matter of
law on its assertion against Smith of the public=s rights in the
alley.[6]









Abandonment 

Smith moved for summary judgment on the basis that the
alley, or at least the northern 120.48-foot portion of the alley, has been
abandoned and is as a matter of law no longer subject to the public=s rights.  In
support of her motion, Smith argued that undisputed facts in the record
establish both common law and statutory abandonment of the alley.  Because we
agree that Smith has established as a matter of law that the alley has been
abandoned pursuant to statute, we do not reach the issue of common-law
abandonment.

Section 251.057 of the Texas Transportation Code provides:

(a) A county road is abandoned when its use has
become so infrequent that one or more adjoining property owners have enclosed
the road with a fence continuously for at least 20 years.  The abandoned road
may be reestablished as a public road only in the manner provided for establishing
a new road.

(b) This section does not apply to:

(1) a road to a cemetery; or

(2) an access road that is reasonably necessary to reach adjoining real
property.

Tex.
Trans. Code Ann. ' 251.057 (Vernon 1999).  Smith has
presented evidence that the alley (1) has been partially enclosed by fence for
at least 20 years; (2) is not a road to a cemetery; and (3) is not an access
road that is reasonably necessary to reach adjoining property.  The bank does
not dispute or controvert this evidence.








The bank contends, however, that the statute is
inapplicable in this case because the alley is not a Acounty road.@  We disagree. 
Under Section 251.051 of the Transportation Code, the commissioners court of a
county Ashall assume
control of streets and alleys in a municipality that does not have an active de
facto municipal government.@  Id. ' 251.051(1)(2). 
While the bank argued in response to Smith=s motion for
summary judgment, and in its own motion, that AChappell Hill is a
historic vibrant town . . . in continuous existence as a town since 1849,@ the bank does not
contend that Chappell Hill has Aan active de facto municipal government.@  In fact, the
bank submitted with its response historical information indicating that (1) the
town of Chappell Hill was incorporated in 1856, (2) mayor-council government
ended in 1884, and (3) voters rejected reincorporation of the town in 1984.  See
Handbook of Texas Online, Chappell Hill,
http://www.tshaonline.org/handbook/online/articles/CC/hlc21.html (accessed
April 2, 2008). 

Even if Chappell Hill has had no active municipal
government for many years, the bank contends the alley is not a county road
because Smith presented no proof the commissioners court actually did assume
control over the alley.  According to the bank, Section 251.051 is not Aself-executing,@ and a county must
somehow expressly undertake or accept the control contemplated by the statute. 
Smith argues that control over municipal streets and alleys simply defaults to
the county when there is no active de facto municipal government.  Under her
view, pursuant to Section 251.051, the undisputed long-standing non-existence
of Chappell Hill=s municipal government results in the
alley=s being a county
road for purposes of Section 251.057.  The parties cite no authority, and we
find none, supporting or refuting either party=s reading of
Section 251.051.[7]  









We conclude Section 251.051 gives a county de jure
control over the streets and alleys of a non-functioning municipality.  It is
not material whether the county affirmatively exercises control by maintaining
the streets and alleys or otherwise asserting powers over them, or whether the
county even acknowledges its de jure control.  Under Section 251.051, where a
municipality does not have an active de facto municipal government, the streets
and alleys are county roads.  The alley in Block 1 of Chappell Hill is a county
road.

As a county road, the alley can be abandoned under Section
251.057.  Undisputed evidence in the record establishes that the criteria for
statutory abandonment are satisfied.  A portion of the alley has been enclosed
with a fence continuously for at least 20 years (in this case, almost 50
years), the alley is not a road to a cemetery, and the alley is not an access
road reasonably necessary to reach adjoining property.  See Tex. Trans.
Code Ann. ' 251.057(a)(2).

At oral argument, the bank stated that by holding the alley
has been abandoned, this court would of necessity hold that all streets and
alleys of Chappell Hill have been abandoned.  The bank=s authority for
this proposition is Allison v. Griffin, 128 Tex. 86, 96 S.W.2d 74, 77-78
(1936).  The bank misconstrues the Supreme Court=s opinion.  First,
Allison v. Griffin involved common-law abandonment and is not
instructive to our analysis of whether the alley has been abandoned under the
terms of Section 251.057.  Second, in Allison, the Court refused to
uphold purported rights in a public park when the entire proposed town, of
which the park was to be a part, had failed to materialize.  The bank is wrong
to characterize the opinion as holding that abandonment of one street or road
of a dedicated city results in the abandonment of the remainder of the
dedicated streets, roads, and public lands.    

Pursuant to Section 251.057, Washington County has
abandoned the portion of the alley abutting Smith=s property that
has been enclosed by fence for more than 20 years.  As a matter of law, the
property is thus not subject to being opened for public use.  We need not and
do not address whether any other portion of any other road or alley in Chappell
Hill has been abandoned.

Evidentiary Rulings








The bank complains on appeal that the trial court erred in
failing to grant a number of its objections to Smith=s summary-judgment
evidence.  The pieces of evidence as to which the bank claims its objections
were erroneously overruled are (1) Lillian Smith=s affidavit testimony (a) that her aunt relied on the 1959
quitclaim deed in constructing her house within the confines of the alley, (b)
discussing the purposes, intent, or effect of the quitclaim deed, and (c) that
officials from Washington County represented to her that the county does not
intend to open the alley as a public thoroughfare; and (2) the county judge=s and a county commissioner=s affidavit testimony that (a) the
alley has been abandoned for public use for at least 50 years, and (b) they
consider the alley abandoned under Section 251.057. Because we affirm the
summary judgment on the strength of undisputed evidence in the record to which
the bank did not object, however, there is no harm even if the trial court=s rulings
constitute an abuse of discretion.  Consequently, we do not address the propriety of
the bank=s objections or the trial court=s failure to sustain them.  

Attorney=s Fees

In its final point of error, the bank contends the trial
court erred in awarding attorney=s fees to Smith. 
The Texas Uniform Declaratory Judgment Act provides, AIn any proceeding
under this chapter, the court may award costs and reasonably and necessary
attorney=s fees as are
equitable and just.@  Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon
1997).  

 

 

 

 








Contrary
to the bank=s argument, this provision supports an award to either
side in a declaratory-judgment action.  See, e.g., Arthur M. Deck &
Associates v. Crispin, 888 S.W.2d 56, 62 (Tex. App.CHouston [1st Dist.]
1994, writ denied) (affirming award of attorney=s fees to
defendant in declaratory-judgment action).  Proper pleading and proof supports
the trial court=s award of $10,100.00 in attorney=s fees to Smith. 
We affirm the award as a proper exercise of the trial court=s discretion.         

Conclusion

Undisputed evidence establishes as a matter of law that the
bank is entitled to assert against Smith neither a private right of easement
nor the public=s right of use in the portion of the alley abutting
her property in Block 1 of Chappell Hill, Texas.  The trial court thus did not
err in granting Smith=s motion for summary judgment or denying
the bank=s motion.  Because
the objections the bank claims the trial court erroneously overruled do not
involve the evidence on which the trial court=s judgment is
properly based, any such error did not result in the rendition of an improper
judgment.  Therefore, we do not address these rulings.  Finally, the trial
court=s award of
attorney=s fees to Smith
was not an abuse of discretion.  We affirm the trial court=s judgment.

 

 

/s/      Jeff Brown

Justice

 

Judgment rendered and Opinion filed
May 8, 2008.

Panel
consists of Chief Justice Hedges and Justices Brown and Boyce.









[1]  In the 1907 deed, the property sold to The Farmers= State Bank of Chappell Hill is described as Athat certain tract or parcel of land known as Lot No.
7 in the town of Chappell Hill Texas fronting on Main Street and situated on
the West side of said Street with metes and bounds as follows: Commencing at
the N.E. corner of the brick store house owned and occupied at the present time
by Wm. Rheinstein[, t]hence in a Northerly direction on a continuation of the
East line of the outer wall of Rheinsteins store along said Main Street 40 feet
to corner[, t]hence in a Westerly direction parallel with the North brick wall
of Rheinstein store 100 feet to an alley[, t]hence South parallel with Main
Street 40 ft to corner of Rheinstein=s
lot[, t]hence in a Easterly direction with North line of Rheinsteins lot and
store to the place of beginning[.]@  
(Variations in possessive punctuation of ARheinstein@ exist in original deed.)  The 1993 deed contains this
description: AAll that certain tract or parcel of land, lying and
being situated in the Town of Chappell Hill, Washington County, Texas, part of
the Wm. Munson Survey, A-90, being Lot 8 of the Town of Chappell Hill, Texas,
and being more fully described by metes and bounds on Exhibit >A= attached
hereto.@  The description contained in Exhibit >A= is similar to
the description quoted above from the 1907 deed and makes specific reference to
Athe north margin of Cedar Street at its intersection
with the east line of a 20 foot alley for the southwest corner hereof and of
said Lot 8.@





[2]  The landowner identified as Joe Knight did not sign
the quitclaim deed.  However, in October of 2003, John Philip Lesser, as
successor in interest to Joe Knight, ratified and joined in the quitclaim
deed.  In the ratification, John Philip Lesser quitclaimed all interest in the
property subject to the quitclaim deed and stated that his agreement shall bind
his heirs, successors, and assigns.





[3]  There is no dispute that the encroachments of which
the bank complains are within the northern 120.48 feet of the alley, between
the eastern and western lots owned by Smith in Block 1.





[4]  The reference in the quitclaim deed to the alley running from Pecan
Street north to the Brenham Road is contained in a recital rather than a
decretal paragraph.  Smith cites Alford v. Krum, 671 S.W.2d 870, 872
(Tex. 1984), for the proposition that when there is a conflict between clauses
in a deed that are not of equal dignity, the granting clause as the key
expression of intent prevails over any other provision.  The Supreme Court
overruled Alford in Luckel v. White, 819 S.W.2d 459, 464 (Tex.
1991).  Both Alford and Luckel involved the conveyance of
fractional interests in mineral estates.  The earlier case pronounced a rule
that the granting clause of a conveyance will prevail over irreconcilable
conflicts in other causes; the later case avoided conflict by harmonizing the
various clauses.  (In his dissent in Luckel, Chief Justice
Phillips noted the irony of the Court=s
choosing to overrule Alford when it avoided finding the very fact on
which Alford was based B an
irreconcilable conflict between clauses in the same deed.) 





[5]  Under this circumstance in particular, the equities
are not with the bank.  See, e.g., Premium Oil Co. v. Cedar City, 112
Utah 324, 331-32, 187 P.2d 199, 204 (1947) (refusing to sustain purchaser=s demand that platted street be opened, where
purchaser had leased other land abutting street for eight years and knew at the
time of purchase that street could not be used as platted without destroying
permanent improvements).





[6]  In her brief, Smith argues, AWhile estoppel is not applied as freely against a public
way, as it is in the case of private easements, nevertheless, cases do arise of
such character that justice requires the application of estoppel even against
the public.@  Indeed, estoppel has been applied
in certain cases when the public=s rights were not asserted for a significant period of time
in the face of an obvious obstruction.  See, e.g., Krause v. City of El Paso,
101 Tex. 211, 217-18, 106 S.W. 121, 123 (1907) (holding city was estopped to
assert rights enforcement of which would require homeowner to remove house that
for 20 years encroached on dedicated but unopened city street); Sutor v.
International & G.N.R. Co., 59 Tex. Civ. App. 73, 76-77, 125 S.W.843,
945 (Austin 1910, writ ref=d) (holding city was estopped to seek destruction of building blocking
access to claimed public easement over private property, where construction of
building was openly visible yet city waited ten years from construction to
assert purported easement).  Smith pleaded estoppel as a defense to the bank=s claims, but did not assert
equitable estoppel B as opposed to estoppel by deed B as a basis for summary judgment. 
We are restricted to reviewing the summary-judgment evidence in light of the
grounds asserted in the parties= motions.  Thus, in spite of Smith=s briefing, we do not address Smith=s estoppel defense to the bank=s assertion of the public=s rights in the alley. 





[7]  The bank emphasizes that Smith herself presented affidavit testimony
from the county judge and a county commissioner that the ACounty of Washington has never
assumed control over this alley or any alley in the town of Chappell Hill under
the provisions of Tex. Trans. Code Ann.
'251.051.@  We do not agree with the bank
that this testimony proves as a matter of law the alley is not a county road.  Testimony
from county officials that the county did not expressly assume control over the
alley does not answer the question whether the statute requires express
assumption of control for the alley legally to be a county road.